CITBYCML W/JD SAC1

Maria Kay McKinney

Bexar County District Clerk

ccepted By: Maria Abilez

CAUSE NO. **2017CI16766**

| | | |
|---|---|---|
| ANTHONY KOCH | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | **288TH** |
| VS. | § | __TH JUDICIAL DISTRICT |
| | § | |
| CENTRAL MUTUAL INSURANCE | § | |
| COMPANY | § | |
| *Defendant.* | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF ANTHONY KOCH ("Plaintiff"), and files his Original Petition, complaining of CENTRAL MUTUAL INSURANCE COMPANY ("CENTRAL" or "Defendant"), and alleges and states as follows:

### A. DISCOVERY CONTROL PLAN

1.     Plaintiff intends for discovery in this action to be conducted under Level 2, in accordance with Tex. R. Civ. P. 190.3.

### B. PARTIES

2.     Plaintiff, ANTHONY KOCH ("Plaintiff"), is an individual owning a residential property in Bexar County at 2114 Mannix Drive, San Antonio, Texas 78217.

3.     Defendant, CENTRAL MUTUAL INSURANCE COMPANY ("CENTRAL"), is a foreign insurance carrier organized and existing under the laws Ohio and authorized to conduct insurance business in Texas, may be served with process by serving its designated agent for service of process, Corporate Creations Network, Inc., in Harris County at 2425 West Loop South, Suite 200, Houston, Texas 77027.

Page 1

Plaintiff's Original Petition

## C. JURISDICTION

4.      This Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5.      This Court has jurisdiction over Defendant CENTRAL because this Defendant purposefully availed itself of the privilege of conducting business in the State of Texas and established minimum contacts sufficient to confer jurisdiction over this Defendant, and the assumption of jurisdiction over CENTRAL will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process.

6.      Plaintiff would show that Defendant CENTRAL had continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over said Defendant.

7.      Plaintiff would also show that the cause of action arose from or relates to the contacts of Defendant CENTRAL to the State of Texas, thereby conferring specific jurisdiction with respect to this Defendant.

8.      Furthermore, Plaintiff would show that Defendant CENTRAL engaged in activities constituting business in the State of Texas as provided by Section 17.042 of the Texas Civil Practices and Remedies Code, in that said Defendant contracted with a Texas resident and performance of the agreement in whole or in part thereof was to occur in Texas, committed a tort in whole or in part in Texas, and recruits or has recruited Texas residents for employment inside or outside the state.

## D. VENUE

9.      Venue is proper in Bexar County, Texas, because the insured property is situated in Bexar County, Texas. Tex. Civ. Prac. & Rem. Code §15.032.

## E. CONDITIONS PRECEDENT

10.      All conditions precedent to recovery have been performed, waived, or have

occurred.

## F. AGENCY AND *RESPONDEAT SUPERIOR*

11.    Whenever in this petition it is alleged that CENTRAL did any act or omission, it is meant that CENTRAL itself or its agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of CENTRAL or done in the normal routine, course and scope of the agency or employment of CENTRAL or its agents, officers, servants, employees, or representatives.

## G. FACTS

12.    Plaintiff is the owner of Texas Insurance Policy No. 9182383 (hereinafter referred to as "the Policy"), which was issued by Defendant CENTRAL.

13.    Plaintiff owns the insured residential property specifically located at 2114 Mannix Drive, San Antonio, Texas 78217 (hereinafter referred to as "the Property").

14.    Defendant CENTRAL sold the Policy insuring the Property to Plaintiff.

15.    On or about April 12, 2016, a severe hailstorm and/or windstorm struck Bexar County, Texas, causing severe damage to homes and businesses throughout the area, including Plaintiff's Property ("the Storm"). Specifically, Plaintiff's roof sustained extensive damage during the Storm. Water intrusion through the roof caused extensive damage throughout the interior of the Property including, but not limited to, the interior ceilings, walls, and flooring of the Property. Plaintiff's Property also sustained substantial exterior damage during the Storm.

16.    After the Storm, Plaintiff filed a claim (Claim No. 9182383) with his insurance company, Defendant CENTRAL, for the damages to the Property caused by the Storm.

17.    Plaintiff submitted a claim to Defendant CENTRAL against the Policy for Roof Damage, Structural Damage, Water Damage, and Windstorm and Hail Damage the Property sustained as a result of the Storm.

18.     Plaintiff requested that Defendant CENTRAL cover the cost of repairs to the Property pursuant to the Policy, including but not limited to: repair and/or replacement of the roof and repair of the interior and exterior damages to the Property.

19.     Defendant CENTRAL assigned an adjuster to adjust this claim. CENTRAL'S adjuster was improperly trained and failed to perform a thorough investigation of Plaintiff's Hail and Wind Damage Property claim and intentionally, knowingly and deceptively, with malice, set out to deny all or a portion of the Plaintiff's Hail and Wind Damage Property claim by engaging in false, misleading, deceptive and fraudulent acts and practices of omission and commission which ultimately resulted in Plaintiff being denied the benefit of the bargain and loss payments due under the terms and conditions of the Policy of Insurance issued by CENTRAL.

20.     CENTRAL'S adjuster's adjustment of the claim fraudulently, wrongfully, deceptively and negligently denied the claim and undervalued the cost of repair and/or replacement of covered items of damage to the insured Property in the claim report, which resulted in Plaintiff receiving insufficient funds from CENTRAL to cover the losses sustained by Plaintiff to repair and/or replace the insured Property damaged by the Storm, excluding the amounts of the deductible and non-recoverable depreciation assessed pursuant to the terms and conditions of the Policy for which Plaintiff was responsible.

21.     As a result thereof, on or about April 3, 2017, or shortly thereafter, Plaintiff received a claim check in the amount of $11,868.46 from Defendant CENTRAL, which was wholly insufficient to repair and/or replace the covered damages to the Property resulting from the Storm. Plaintiff's actual covered damage to the Property as a result of the Storm exceeded the sum of $92,292.17, which is continuing to increase each day that CENTRAL fails and refuses to pay the Plaintiff's claim due to increases in the costs of labor and materials.

22.     Based upon information and belief, CENTRAL'S adjuster was compensated on a

per-claim-adjusted basis and/or other combination of compensation tied to the quantity of claims adjusted. CENTRAL'S adjuster was therefore motivated to conduct an inadequate and substandard claim investigation of Plaintiff's Hail and Wind damage loss to Plaintiff's Property resulting from the Storm in order to increase the number of claims adjusted by him/her for his/her personal pecuniary benefit, as indicated below in sub-paragraphs (a) thru (g). CENTRAL'S adjuster was negligent in violating CENTRAL'S written policies as they relate to claims handling practices by failing to fully investigate and document all damage to Plaintiff's insured Property and by failing to fully investigate and evaluate the Plaintiff's insured loss based upon local replacement and/or repair costs for each item of damage, as indicated below in sub-paragraphs (a) thru (g). Additionally, based upon information and belief and the acts and practices actually employed by CENTRAL'S adjuster, CENTRAL'S adjuster held a personal bias in favor of insurance companies and prejudice against insurance claimants generally, and more specifically towards Plaintiff herein as specifically demonstrated below in sub-paragraphs (a) thru (b). CENTRAL'S adjuster, intentionally, knowingly and fraudulently, with malice, engaged in the following specified acts and practices, among others stated herein, in violation of and in breach of the adjuster's moral, ethical and legal duties to Plaintiff as a licensed claims adjuster, which was a producing and proximate cause of the damages and losses sustained herein by Plaintiff resulting in the denial and/or underpayment of Plaintiff's claim; to wit:

    a)    CENTRAL'S adjuster's investigation and inspection for damages to the Plaintiff's Property was performed in an insufficient time period to perform an adequate assessment of the damage to the Property resulting from the Storm;

    b)    CENTRAL'S adjuster failed to and/or refused to properly interview Plaintiff to ascertain other damages that were not readily apparent or

would not be readily apparent to an individual unfamiliar with the Property in its pre-Storm condition;

c)   CENTRAL'S adjuster refused to and did not inspect for hidden or latent damage resulting to Plaintiff's Property that is customarily found to exist on property that has gone through a hail and wind storm of the severity of that which occurred in Bexar County on April 12, 2016;

d)   CENTRAL'S adjuster failed and refused to include the usual and customary charges for costs of materials, supplies, labor and contractor's overhead and profit charged by contractors in the Bexar County area for the repair, replacement and restoration of the Plaintiff's Property damaged by the Storm;

e)   CENTRAL'S adjuster performed only a cursory inspection of the roof and exterior, and interior of the insured Property; and failed to assess, estimate and include all covered damage to the Property in the report and adjustment of loss to CENTRAL for exterior and interior water damages and/or note other damages existing to the Property at the time of inspection such as ceilings and walls that were sustained as a result of the Storm;

f)   CENTRAL'S adjuster, during his/her investigation of the Plaintiff's claim, failed to include all damages sustained to the Property by the Storm, thus submitting an inaccurate and false report of Plaintiff's covered Storm Property losses to CENTRAL;

g)   CENTRAL'S adjuster fraudulently represented to Plaintiff verbally and by conduct, in preparing an inadequate, incomplete and undervalued estimate

of the cost of replacement and/or repair of Storm damage to Plaintiff's Property, that the majority of the damages to the Property were not severe or Storm related; and that most, if not all, of the covered damages found to exist upon observation of Plaintiff's Property, were not covered by the Policy, but were due to normal wear and tear or the result of other causes, when in fact such damage was Storm related and should have been included in CENTRAL'S adjuster's report to CENTRAL.

23.     Defendant CENTRAL failed to thoroughly review the fraudulent and inaccurate assessment of the claim by its adjuster, and ultimately approved its adjuster's inaccurate report of the damages to the Property.

24.     The mishandling of Plaintiff's claim has also caused a delay in the ability to fully repair the Property, which has resulted in additional damages. To date, Plaintiff has yet to receive the full payment to which he is entitled under the Policy and has not been able to fully repair or replace the damage to the insured Property.

25.     CENTRAL, in hiring adjusters and claims representatives, was responsible to and had a legal duty to ensure that they hired and retained competent, qualified and ethical licensed adjusters and claims representatives who would deal fairly, honestly and in good faith with the policy holders of CENTRAL in the practice of insurance claims handling. CENTRAL breached such duties in connection with Plaintiff's Property Damage claim resulting from the Storm by failing to properly train, direct and oversee the claims handling practices employed by its adjuster.

26.     At all times material herein, CENTRAL had a non-delegable contractual legal duty to timely, fairly and in good faith fully investigate, process, adjust, timely pay and re-adjust claims for all covered losses sustained by its policy holders as a result of the Storm, including

Plaintiff. CENTRAL represented that it would do so in advertising mediums throughout the State of Texas and specifically in writing to its policy holders as an inducement for them to purchase and continue to renew homeowners and business property insurance with CENTRAL. Due to a lack of knowledge and understanding of the insurance claims handling process, knowledge of construction costs and insurance policy coverage issues relating to storm related property losses, Plaintiff relied on such representations to his detriment, purchased the Policy from CENTRAL and accepted the estimate of damages from its adjuster which, unknown to Plaintiff, included denial and underpayment of covered losses and damages sustained in the Storm. CENTRAL made such representations knowing they were false and with the intent that Plaintiff relies on such representations. CENTRAL, having breached its legal duty to timely, fairly and in good faith investigate, process, adjust and pay for all covered losses sustained by Plaintiff herein, is responsible for the acts of omission and commission set forth herein and above in connection with its adjuster's investigation and claims handling practices employed to deny and/or underpay the covered losses and damages sustained by Plaintiff as a result of the Storm.

27.     CENTRAL distributed training, educational, and instructional materials to the field claim representatives and adjusters; held meetings and issued directives to the field instructing how CENTRAL wanted the hail losses like Plaintiff's to be handled. CENTRAL communicated and disseminated claims handling practices and methodologies to its field adjusters of 1) "Quantity over Quality", 2) Minimization of damage estimates, 3) Under-valuation of reported replacement and/or repair estimates, and 4) Omission of probable covered damages in the report to the Property from the Storm. These policies served to fuel and motivate CENTRAL'S adjuster's individual pre-disposition of bias in favor of insurance companies and prejudice towards claimants and the resulting losses sustained by Plaintiff as set forth herein.

28.     CENTRAL and its adjuster conducted a substandard and incomplete inspection of

Plaintiff's Property. Plaintiff's damages were noted in an inaccurate report and/or estimate of Plaintiff's Storm damages, which failed to include many of the damages noted upon inspection and grossly underestimated and undervalued those damages that were included.

29.     Defendant CENTRAL failed to thoroughly review the assessment of the claim by its adjuster and ultimately approved its adjuster's inaccurate report of the damages. As a result, Plaintiff was denied payment on his claim and has suffered damages.

30.     CENTRAL set out to deny and/or underpay properly covered damages. As a result of CENTRAL'S unreasonable investigation, including their under-scoping and incomplete inspection of Plaintiff's Storm damages during their investigation(s) and failure to provide full coverage for the damages sustained by Plaintiff, Plaintiff's claim was improperly adjusted, and Plaintiff was denied adequate and sufficient payment to repair the Property and has suffered damages.

31.     CENTRAL'S adjuster intentionally, knowingly and as directed by CENTRAL, conducted a substandard investigation of Plaintiff's claim with the intent to underpay or deny all or a portion of the claim for the benefit of CENTRAL, which resulted in losses and damages to Plaintiff's Property. This practice of wrongfully denying and/or underpaying claims of CENTRAL policy holders for covered losses sustained by them in the Storm by refusing to fully inspect the Property for damage, misrepresenting coverage, the scope of coverage and loss, under-estimating repair costs, denying claims for covered losses underpaying covered losses of its insured policy holders, was specifically employed by CENTRAL and its adjuster in connection with the handling of the claim for damages and losses sustained by Plaintiff as a result of the Storm.

32.     CENTRAL'S adjuster engaged in a claims processing handling practice designed by CENTRAL to reduce the overall loss payments CENTRAL was obligated contractually to

pay policyholders as a whole in the Bexar County area for the covered losses resulting from the Storm. CENTRAL directed its adjusters and claim representatives to misrepresent coverage, the scope of coverage and loss, under-estimate repair costs, deny claims for covered losses, underpay covered losses of its insured policy holders, refuse to inspect portions of the properties damaged, and claim that damage to the property found to exist was due to normal wear and tear or was the result of other causes that pre-existed the Storm as a basis for not including those damages in the report. Plaintiff's claim, as demonstrated herein, is typical of the deceptive acts and practices and unfair claims settlement practices intentionally and knowingly employed by CENTRAL and its adjuster in connection with the handling of Plaintiff's claim.

33.     As detailed in the paragraphs below, Defendant CENTRAL wrongfully denied Plaintiff's claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, CENTRAL underpaid some of the Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation.

34.     To date, CENTRAL continues to delay in the payment for the damages to the Property. As such, Plaintiff has not been paid in full for the damages to his Property.

35.     CENTRAL failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. CENTRAL'S conduct constitutes a breach of the insurance contract between CENTRAL and Plaintiff.

36.     CENTRAL misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence.

CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §§541.060(a)(1).

37.      CENTRAL failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

38.      CENTRAL failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Specifically, CENTRAL failed to offer Plaintiff adequate compensation without any explanation why full payment was not being made. Furthermore, CENTRAL did not communicate that any future settlements of payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's claim. CENTRAL'S conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(3).

39.      CENTRAL failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from CENTRAL.. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

40.      CENTRAL refused to fully compensate Plaintiff under the terms of the Policy, even though CENTRAL failed to conduct a reasonable investigation. Specifically, CENTRAL performed an incomplete and outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

41.     CENTRAL failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

42.     CENTRAL failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

43.     CENTRAL failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not received full payment for the claim. CENTRAL'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

44.     From and after the time Plaintiff's claim was presented to CENTRAL, the liability of CENTRAL to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, CENTRAL has refused to pay Plaintiff in full despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. CENTRAL'S conduct constitutes a breach of the common law duty of good faith and fair dealing.

45.     CENTRAL knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

46.     As a result of CENTRAL wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing him with respect to these causes of action.

## H. CAUSES OF ACTION

47.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-46 and incorporates the same herein by this reference as if here set forth in full.

48.     Defendant CENTRAL is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

49.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-48 and incorporates the same herein by this reference as if here set forth in full.

50.     Defendant CENTRAL'S conduct constitutes a breach of the insurance contract made between CENTRAL and Plaintiff.

51.     Defendant CENTRAL'S failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of CENTRAL'S insurance contract with Plaintiff.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

52.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-51 and incorporates the same herein by this reference as if here set forth in full.

53.     Defendant CENTRAL'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations

under this article are made actionable by TEX. INS. CODE §541.151.

54.    Defendant CENTRAL'S unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of compensation and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

55.    Defendant CENTRAL'S unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though CENTRAL'S liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

56.    Defendant CENTRAL'S unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

57.    Defendant CENTRAL'S unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

58.    Defendant CENTRAL'S unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(A)(7).

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
## THE PROMPT PAYMENT OF CLAIMS

59.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-58 and incorporates the same herein by this reference as if here set forth in full.

60.     Defendant CENTRAL'S conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

61.     Defendant CENTRAL'S failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

62.     Defendant CENTRAL'S failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

63.     Defendant CENTRAL'S delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## RESPONSIBILITY FOR ACTS OF AGENTS AND RATIFICATION OF ACTS

64.     CENTRAL'S adjuster, whose conduct is referenced herein and above, is an agent of CENTRAL based upon his/her acts of commission and omission in the handling of Plaintiff's claim, including inspections, adjustments, and aiding in the adjustment of the loss for or on behalf of the insurer. TEX. INS. CODE §4001.051.

65.    Separately, and/or in the alternative, as referenced and described above, CENTRAL ratified the actions and conduct of its adjuster including the manner in which he/she discharged or failed to properly discharge his/her duties under the common law and applicable statutory laws and regulations.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

66.    Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-65 and incorporates the same herein by this reference as if here set forth in full.

67.    Defendant CENTRAL'S conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured in insurance contracts.

68.    Defendant CENTRAL'S failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, CENTRAL knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## FRAUD

69.    Plaintiff repleads all of the material allegations above set forth in Paragraphs 1-68 and incorporates the same herein by this reference as if here set forth in full.

70.    Plaintiff is not making any claims for relief under federal law.

71.    CENTRAL is liable to Plaintiff for common law fraud.

72.    CENTRAL represented in its Policy that covered Hail and Wind Damages would be insured against loss. Plaintiff, to his detriment, purchased CENTRAL'S policy in exchange for a benefit CENTRAL knew Plaintiff would not receive. Plaintiff further relied to his detriment upon the false, fraudulent and deceptive acts and practices employed by CENTRAL, in performing an inspection, investigation and evaluation of Plaintiff's Storm damages. Plaintiff is not knowledgeable in the manner and scope required to investigate a storm related loss, nor

knowledgeable in insurance loss coverage issues. CENTRAL, based upon their experience, special knowledge of storm-related structural loss issues and insurance coverage issues were able to deceive Plaintiff into believing that the property damage loss would be competently investigated by a qualified, ethical and experienced adjustor and that the loss would be properly, fairly and in good faith evaluated and assessed and the claim paid. Plaintiff was unaware that all such representations and conduct relating to the investigation and handling of the claim were performed with the intent and purpose to defraud, take advantage of and deny and/or undervalue the Property losses sustained by Plaintiff. Plaintiff relied to his detriment on such actions and representations resulting in the losses and damages complained of herein. Plaintiff has been unable to repair the Storm damages and/or make temporary repairs using Plaintiff's own limited funds, prolonging Plaintiff's hardship of living in a storm-damaged home. CENTRAL knew at the time the above misrepresentations and fraudulent conduct occurred that the representations contained in the estimate of loss and communicated to Plaintiff were false. Each and every one of the representations and deceptive acts and practices, as described above, and those stated in this paragraph, concerned representations and falsehoods concerning material facts for the reason that absent such representations, Plaintiff would not have acted as he did, and which CENTRAL knew were false or made recklessly without any knowledge of their truth as a positive assertion.

73.     The statements were made with the intention that they should be acted and relied upon by Plaintiff, who in turn acted in reliance upon such statements and actions, thereby causing Plaintiff to suffer injury and constitue common law fraud.

### I. KNOWLEDGE

74.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## J. DAMAGES

75.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

76.     As previously mentioned, the damages caused by the April 12, 2016 hailstorm and/or windstorm have not been properly addressed or repaired in the months since the Storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of CENTRAL'S mishandling of Plaintiff's claim in violation of the laws set forth above.

77.     For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claim, together with attorney's fees.

78.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times his actual damages. TEX. INS. CODE §541.152.

79.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

80.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

81.     For fraud, Plaintiff is entitled to recover actual damages and exemplary damages

for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

82.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### K. STATEMENT OF RELIEF AND DAMAGES

83.     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief, the maximum of which is over $100,000 but not more than $200,000. A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

### L. RESERVATION OF RIGHTS

84.     Plaintiff reserves the right to prove the amount of damages at trial. Plaintiff reserves the right to amend his petition to add additional counts upon further discovery and as his investigation continues.

### M. JURY DEMAND

85.     Plaintiff hereby requests that all causes of action alleged herein be tried before a jury consisting of citizens residing in Bexar County, Texas. Plaintiff hereby tenders the appropriate jury fee.

### N. DISCOVERY

86.     Written Discovery in this case is governed by the following Order:

a.   Standing Pretrial Order Concerning Bexar County Residential Hail Claims.

## O. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial hereof, said Plaintiff have and recover such sum as would reasonably and justly compensate him in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity.

Respectfully submitted,

PHIPPS, LLP

THE PHIPPS
102 9th Street
San Antonio, Texas 78215
Telephone:     (210) 340-9877
Telecopier:     (210) 340-9887
Email: gortiz@phippsllp.com
Email: rsoliz@phippsllp.com

By:____ /s/ J. Gabriel Ortiz _____
        MARTIN J. PHIPPS
        State Bar No. 00791444
        J. GABRIEL ORTIZ
        State Bar No. 24085512

**ATTORNEYS FOR PLAINTIFF**

68880

| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| BEXAR HAIL | § | |
| | § | BEXAR COUNTY, TEXAS |
| RESIDENTIAL | § | |
| | § | |
| CLAIM LITIGATION | § | CIVIL JUDICIAL DISTRICT COURTS |

## STANDING PRETRIAL ORDER CONCERNING
## BEXAR COUNTY RESIDENTIAL HAIL CLAIMS

This order applies to pretrial matters in residential property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the residential insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 100 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** – Within 60 days of the filing of an answer by the residential insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the residence, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the residential insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the



# 68880

insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 60 day time period. The insurance carrier is also ordered to notify the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request. Such reports shall not be discoverable or admissible at trial or any hearing. If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced. The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same residential insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the residential insurance carrier shall be permitted to inspect the residence involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the residential insurance carrier and other defendants may re-inspect the residence with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

Michael Mery, Judge
37th District Court

Stephani Walsh, Judge
45th District Court

Antonia Arteaga, Judge
57th District Court

David A. Canales, Judge
73rd District Court

# 68880

6 8 8 8 0

John D. Gabriel, Jr., Judge
131st District Court

Renée Yanta, Judge
150th District Court

Laura Salinas, Judge
166th District Court

Cathleen Stryker, Judge
224th District Court

Peter Sakai, Judge
225th District Court

Richard Price, Judge
285th District Court

Sol Casseb III, Judge
288th District Court

Karen H. Pozza, Judge
407th District Court

Larry Noll, Judge
408th District Court

Gloria Saldaña, Judge
438th District Court

3

6 8 8 8 0

# 68880

## AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Residential Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

1. An attorney of record for each party, unless the party is self-represented.

2. All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

3. A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.

_____
Judge Presiding

# 68880

SEP 1 8 2017

CERTIFIED MAIL #70162070000075207666

Case Number: 2017-CI-16766

2017CI16766   S00001

ANTHONY KOCH

vs.

CENTRAL MUTUAL INSURANCE COMPANY

(Note Attached document may contain additional litigants)

**CITATION**

IN THE DISTRICT COURT
288th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

"THE STATE OF TEXAS"

DIRECTED TO:   CENTRAL MUTUAL INSURANCE COMPANY

BY SERVING ITS REGISTERED AGENT, CORPORATE CREATIONS NETWORK
2425 W LOOP SOUTH 200
HOUSTON TX 77027

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and ORIGINAL PETITION , a default judgment may be taken against you." Said CITATION with ORIGINAL PETITION  was filed on the 31st day of August, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 13TH DAY OF September A.D., 2017.

JUAN GABRIEL ORTIZ
ATTORNEY FOR PLAINTIFF
102 9TH ST
SAN ANTONIO, TX 78215-1524



Donna Kay McKinney
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By : *Edgar Garcia*, Deputy

---

ANTHONY KOCH
vs
CENTRAL MUTUAL INSURANCE COMPANY

**Officer's Return**

Case Number: 2017-CI-16766
Court:288th Judicial District Court

Came to hand on the 13th day of September 2017, A.D., at 7:42 o'clock A.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL, on the _____ day of _____ 20____, by delivering to: _____ at 2425 W LOOP SOUTH 200 HOUSTON TX 77027 a true copy of this Citation, upon which I endorsed that date of delivery, together with the accompanying copy of the CITATION with ORIGINAL PETITION .

Cause of failure to execute this Citation is _____ .

Donna Kay McKinney
Clerk of the District Courts of
Bexar County, TX
By : *Edgar Garcia*, Deputy

ORIGINAL  (DK003)